Morning Chief Judge Gregory, Judge Wynn, Judge Thacker. May it please the Court, Craig Holman on behalf of Appellant Systems Application & Technologies, Inc. I will sometimes refer to the company as SATEC in my presentation today. This case presents straightforward issues of statutory and regulatory interpretation as related to jurisdiction under the Contract Disputes Act of 1978. Consistent with that Act, SATEC, a small federal contractor based in PG County, Maryland, sought contractual guidance from its counterparty, the United States Navy, as related to three discrete issues. Specifically, SATEC sought guidance from the Navy related to SATEC's agency status, the law applicable to its Navy contracts, and the allowability of certain costs under the Navy contracts. So your action really is capping the question of whether there's even jurisdiction on this whole thing. By the way, I found that what your client does is some pretty interesting stuff. In fact, I wanted to spend more time studying that, but I know that's not in the record. But in any event, so when you are confronted with this situation, you've got California that brings up this law. And then, of course, as I understand it, you still have that case going on in state court now. Is that correct? Yes, Judge. So with that matter going on, you then seek to come under the Contracts Dispute Act in order to, I guess, get something that looks like a declaratory judgment or something like that. You want a declaration as to, you know, if I'm going to have to pay this money, is the Navy going to pay me? But you can't get there if you're talking about money and you don't have a sum certain in there. So if that happens, then I know one and two and three counts are gone. And then you don't get there if the right isn't dealt with on count one in terms of the final agency. So if those things all exist, we stop right there, from what I understand the way this case goes, because we just don't have jurisdiction. And it seems to me that's kind of where the district court went with this and made a determination. You're talking about money here. And that's probably the first hurdle you need to deal with, I would think. But you approach it however you want to. But it seems like jurisdiction is in everything we deal with. If you don't have subject matter jurisdiction, there's no need to talk about anything else. And that Contracts Disputes Act is there for a specific purpose. And there are a bunch of cases. Now, admittedly, I'm going to tell you, they're all over the board. So I'm expecting some confusion to come from your answer right now, because I can't even be clear on it. But it looks like to me that's a pretty strong indication. It could be at least two and three. That's money you're talking about. How do you respond to that? Yeah, and I think it's important, Judge, to first start, as the district court actually did, by taking the agency issue and putting it to the side. And then let me address the two, what I'll call the two Mendiola issues. And I want to start by saying that this is a false distinction. I agree that it sometimes creeps into the law, and you can read it this way. But if you step back and you look at the Contracts Disputes Act and its implementing regulation, FAR 33-201. Sorry, 52, FAR Part 52, 233-1, in the definition of claim, which also appears at FAR 2101. By the way, the FAR is at all codified at 48 CFR. But when you step back and you look at that, there are actually three types of claims that can be filed under the Contract Disputes Act. There is a monetary claim that has a some certain requirement. And what you've expressed about that monetary claim, Judge Winn, is indeed correct. It has to have a some certain, and it has to be certified. That's one category of claim. There's another category of claim, specific in the regulation that you're allowed to bring, that asks for an interpretation of contract provisions. Then, when we're looking at 52, 233-1, or whether we're looking at FAR 2101, the two places the definition of claim appear, there's an or. The word or appears. And then it says any other claim related to or arising out of the contract. And in fact, the Federal Circuit has spoken to this issue pretty clearly. And I believe most clearly in Todd Construction and Alliant Tech Systems. And first of all, in Todd Construction, the Federal Circuit said unequivocally that this is broad jurisdiction. Right? And in Alliant Tech Systems, they also- Isn't the practical effect of what you want the Navy to answer is whether or not you can get money from the Navy if you settle? Absolutely not, Judge. And I think that this is how my opponent was able to distract the district court on this issue, was to make that argument. But I've just challenged the court to think about the two things that we're talking about here, the two Mendiola-related issues. And let me just make sure the court understands very quickly what happened in 2015. I'm not going to spend much time on this because I know you're probably familiar. I think we do understand what happened with the change in the law and all of that. And now you want to figure out whether you should pay or not pay for the sleep time, which is why I asked you, isn't the practical effect of this whether or not you can get money back from the Navy if you do end up having to pay for that sleep time? No, in fact, it's not at all. It's just for us to know what the Navy's position is on the law, Judge. If you actually look, SATEC brought this issue to the United States Navy before. It was a diligent contractor. A diligent small contractor brought this issue to the United States Navy before it was sued. It saw the Mendiola decision. And why does an appellant want to know what the Navy's position on the law is? Because if the Navy, Judge, if the Navy says that federal law, as the U.S. Supreme Court said, disagreeing with the Ninth Circuit, by the way, I mean, to show you the complexity of this issue, the Supreme Court and Parker Drilling dealing with the outer continental shelf on Mendiola disagreed with the Ninth Circuit on the applicability of law, said federal law applies on the outer continental shelf. SATEC understands that if the Navy says, look, we believe that federal law governs Naval Base Ventura County and our Navy ships when you're out supporting them, not Mendiola. SATEC knows that if it goes in the litigation and otherwise, I mean, outside litigation, in the litigation, it knows the Navy's position. So if it goes and settles the case, it may get whacked by the Navy saying, why did you pay something that wasn't due? Right. And in fact, if you read the government's briefs, and this is what's so interesting about their arguments, Judge, that this is about money. No, it's not. In the government's briefs, it repeatedly intimates, as its lawyers said prior, prior to us bringing this claim and prior to SATEC getting sued, that Mendiola does not apply. But they're not going to, the Navy is not going to ask, why did you pay the claim until you asked for some money from the Navy? But this is a trick box. You can pay the claim all day long. But if they if you don't go and ask them for the money, that's I mean, that's what it's about. You want to know if we pay this claim, that's part of what your counsel, if we pay it, are you going to give us our money back? We have we have to understand on the legal issue, Judge, what the United States position is. So we know whether in the lawsuit and in other circumstances with our employees, whether we should be paying this Mendiola wages or not paying Mendiola wages, whether we should be fighting litigation, not fighting litigation. We need to know the position of our contractual counterparty. The answer, quite frankly, the answer, the answer they gave before, before we got sued, before the small business got sued, was that Mendiola did not apply. And if Mendiola they were saying, don't you dare pay, don't you dare pay. So in response to Judge Thacker, the answer does not mean that they say, don't you dare pay that this was a money decision. This is as pure as you can be on a legal issue. What law of what law do you Navy believe applies to this contract? And their likely answer is going to be, in my estimation, based on what they've suggested and otherwise, both prior to the lawsuit, is that Mendiola does not apply. So absolutely, this is not a question about money. Judge, if they say that, there's no money that inures to my client. It answers a basic proposition that we have to know as the United States Navy's counterparty. What do they think about Mendiola applying so we can make reasoned decisions relative to defending litigation, running the contracts day to day, etc. There's no money. So you've got three claims, three counts. Yes, Judge. And I'm looking at count two and three. I could probably understand where you're saying count one may not be that monetary thing. But count two goes back to Judge Thacker's thing. And that is, that's dealing with, you know, having to pay this money. And you want to know, essentially, from the Navy, how does this relate? Do we have to pay this overtime and other compensation under this? And then count three says, if we settle this thing, is that going to be cost that you're going to give us under the contract? Why is that not money? That's money. But, Judge, here's the thing. Here's the thing. This is a false distinction that I don't think is borne out, actually, when you look at the Federal Circuit decisions or otherwise. They dealt with this in Alliant and Todd. If you look at the Armed Services Board of Contract Appeals decisions and TRW and Martin Marietta, they are whether or not costs are allowable under the Federal Acquisition Regulation. Indeed, this is the trick box they put us in, Judge. If you go look at the Federal Circuit's decision in IT&T and Raytheon, both cited in our briefs around page 50, the Federal Acquisition Regulation says that a diligent contractor, if it is going to incur an unusual cost, this is 48 CFR 31-109, should approach the government and get its position on allowability before it pays the amount. Why? Because the contractor is not expected to go into an unusual situation and be at risk. That's right in the CFR. Indeed, what the Department of Justice does, Judge Wynn, if you go and pay without asking, look and see in IT&T and Raytheon. What did the Department of Justice say? Hey, contractor, you had an unusual cost. You never should have paid this without coming and asking us. And if you look at- You realize how many times you've said the word paid? I realize where you're going with what you're trying to say, but on the one hand, it's almost like a fiction. You want the Navy to tell you what it thinks the law is, which wouldn't be binding on anything other than maybe you could come back and try to say maybe it's outside the contract. This is influencing our terms of the contract. That's not going to work. But you want to say, okay, just tell us what you think, but you don't have to pay us anything. You don't have to obligate that you- We're not talking about money that you will pay us. Just tell us what you think the law is. But I don't- That's why I'm hinging on this two and three more so than one. It looks like to me it's money. And even in your explanation, I know where you're going with it, but the word pay and money cannot- It keeps coming off your lips. But, Judge, this is why it's critical for you to understand what I'm saying, which is that there are three different types of claims. It is a false proposition that if your claim has anything to do with money, it is invalid unless it's got a sum certain. The Federal Circuit has rejected that point that the government is arguing. If you look at TRW and Alliant, these are cost principle cases. The exact circumstance I'm talking about here, there are three types of claims. That's one of them. And there is no- Just to be clear, there is no- When we ask, will you treat the cost, the settlement cost, as allowable to recover money under the Federal Acquisition Regulation, your cost needs to be reasonable, allocable, and allowable. When you ask whether something is allowable that's a specific- Do you agree that if this cost would be appropriately claimed by us? And not only does the FAR allow us to ask that question under the CBA, under FAR Part 31, the FAR tells us, tells us a diligent contractor asks and gets the answer to this question before it pays. Because, you know, if you go out and pay, Judge, as I told you, look at Raytheon and ITT. You go out and pay an unusual cost, they deny it in the court. The first thing the Department of Justice says to the court is, why didn't you get our position? Do you want to address your first claim at all before your time runs out? Sure. On the agency issue again, look, probably the clearest thing we can look at here is that the Department of Justice, in this case, issued a letter, unsolicited, to the plaintiffs in the Richard action, interpreting the contract and saying that we were not agents under the PVA and SIA. There is one authority that we can come to to challenge that assertion made by the Department of Justice on the Navy's behalf. We can come under the Contract Disputes Act to- applying the PVA and the SIA is how I get into district court, by the way. What about the prudential issues, given the fact that the California State Court has said otherwise already in the ongoing litigation? Well, first of all, there is no prudential issue from my perspective in the sense that I think Lexmark raises questions about whether that's an appropriate approach or appropriate vision of this. But from a separate, you know, leaving aside whether or not where Congress has granted jurisdiction, whether the court could prudentially deny that jurisdiction, something that Lexmark says is not possible. But leaving that issue aside, the reality is on that particular issue, there is one court. There is one court that is authorized to determine whether or not SATAC is a PVA and an SIA agent as a matter of U.S. doesn't get to declare the rights as between the United States and the Navy under the Navy's contracts. Congress gave that direction to Congress, gave that direction to follow the CDA to get that analysis. And indeed, in TRW, the Armed Services Board of Contract Appeals found that it would be inappropriate, inappropriate to stay this type of case based on the fact that there was some other jurisdiction, jurisdiction looking at the matter, that we have a contractual sorry, a statutory right. And this is the only place we can be to get the answer to this question. Thank you, Judge. I reserve the remainder of my time. Thank you, Mr. Holman. Ms. Murphy. May it please the court. Anne Murphy for the United States. Your Honor, I just want to read the claim, which is at page 51 to 52 of your joint appendix, the second and third claims. It literally says that SATAC wants the Navy to confirm that it, quote, will reimburse first the charges as an allowable cost under the contract if SATAC makes a settlement. Does it matter that SATAC is really saying all it's doing is following the Federal Acquisition Requirements Act in terms of that? If you don't do that, then, you know, you won't be able to maybe get reimbursement and all the things of that nature. So it's just doing what the law tells them you got to do. Well, your Honor, that's that's not true. I mean, they say there's three types of claim and therefore they can kind of bring any claim they want. But as the district court said, the point is that if you if your claim is actually a money claim, that's what it is. And you need a sum certain. So the Federal Circuit and Security Force said something very relevant here, which is that if you have a monetary claim, you need to have that sum certain. And you can't just go to court saying, oh, well, you know, it's you know, I do want money at the end of the day. But this is just for relief arising under the contract. These and the district court was absolutely right. These are monetary claims. There's no sum certain. He says they don't want money at the end of the day. They merely want to understand the Navy's interpretation of the law so that they can make decisions on a daily basis going forward in this California litigation. What's your response to that? So the answer to that is that we do not know what law governs these employment contracts. And the California court is deciding that. That's a question that's pending in that court. They've already said no to the suits and Admiralty Act, as your Honor pointed out. We don't know. And SATEC comes and asks a contracting officer, you know, what do you think the law is that applies to our employment contracts? And that's why this is such a, you know, such a difficult suit to deal with. It's like we have no way of knowing what the law is. So it wants the Navy to basically give it Exhibit A in its California litigation when the Navy's not involved in that litigation and just can't answer that question right now. That's exactly right. And that's what the district court pointed that out, too. It said that even if there was some judgment in this case from this court, it wouldn't actually help SATEC get relief from the insecurity in the California action. Because as you point out, the Navy's not a party to that action. We don't have any influence over what happens. And that court's going to do what it does. And at that point, your Honor, I really do want to assure the court we are standing by to adjudicate any proper claim that SATEC ever has. As counsel said, under the federal acquisition regulation and a cost reimbursement contract, which this is, the Navy is required by law to only reimburse those costs that are reasonable, allocable, and determined to be allowable. What should SATEC do here? They've got a contract. Then you get a law in a state, California, that says you've got to pay your people even when they're sleeping if you have certain control over them. It necessarily changes the terms of the contract in terms of what they had did from an economic. But is there some other avenue other than the Contract Disputes Act that they could pursue? It seemed like they tried a lot of different avenues and then finally came to this one. I guess the Navy as an agency could send certain officers and reports to it. I don't know if they want to take that on or not. It's kind of interesting. I don't know who does it. I guess the Navy contracting people do it, not the Navy itself, because this is money you're talking. We understand that this is very hard for a contractor. How can they find this out? It seems like fundamentally if you're going to have a contract with someone and then the state changes the laws of something, is it just tough luck? That's true. You just have to bear what the state did or wait until it happens and you pay it and submit it and then we'll have it. Maybe that's it. What you're saying is ultimately you just got to go ahead and do it and then seek to see if you can get payment to an avenue other than Contract Disputes Act. There's a couple of points here, Your Honor. One is the most recent iteration of this contract was negotiated in 2018. At that point, SATEC knew that the Mendiola litigation was pending and it knew that it had been sued by its employees. From that perspective going forward, SATEC could have given us a higher cost estimate to reflect the litigation risk. It didn't do that. Since it's a contractual relationship and it's constantly evolving and being renegotiated from time, going forward SATEC can protect itself by increasing its labor costs that it submits to the Navy. So that's one thing. On the other thing, the answer is it is a cost reimbursement contract and if costs increase in California because of a change in California law and it's not addressed in our contract apart from we will reimburse reasonable allocable costs, SATEC really does have to litigate or settle. Or Council was talking about the procedure for making an advance agreement. Notably, Your Honor, they talk a lot about that, but that's not what they asked for here. They didn't come and say Navy, please will you negotiate with us? Can we get an advance agreement? We want to settle this case. Here's what it would look like. They just want this blanket declaration that if they settle, will it be allowable costs? How would it ask that? You mean outside of litigation just come as a matter of policy to go and ask the Navy? It tried that is what I remember. And got stonewalled. You couldn't get anything from the Navy. Couldn't get them to commit. You send a letter and basically said, hey, that's interesting. First, it looked like to me they were in. Then they kind of back down. That happens sometimes when you change up people. You back down and decide, no, I don't want to talk about this right now. I don't know if that was open to them as an avenue to go and say, well, we got this coming up here. Why don't we renegotiate this? Was that available? There is. And it's a 48 CFR 31.109. There is a procedure whereby if you think you've got an unusual cost coming up, you can go and talk and see if you can have a meeting of the minds. It's not totally clear here because these costs are just costs they have to incur anyway. But let's say that they could. They have not done that. And in order to get those costs approved, they would have to be specific. They would have to say, here is the settlement. Here are the claims we are settling. Here are the contracts they belong to. And so that's what we don't have here. We have no idea because there are no additional costs yet. We don't know what they would look like. We don't know what law the California court's going to apply. We don't know if it's going to think they're like little federal parts or California parts. And until we have some clarity or until SATA even brings us like, here is what the settlement agreement would look like and a very detailed thing that we can talk about, we literally are not permitted by the FAR to give it some declaration that whatever costs it incurs, we're going to cover it under this contract. We just can't do it. On the question of whether this is monetary or non-monetary, does the Federal Circuit case or Secure Force hurt or does it help you case? Oh, it helps us. That's our best case, Your Honor. It just says, if you have a claim, it rebuts the argument that there's three kinds of claims, so you kind of take your pick. What Secure Force says is there's three kinds of claim, but if your claim is actually a monetary claim, then you have to have a sum certain. You can't say, well, I don't have a sum certain, but it doesn't matter because I'm actually just asking for an interpretation of contracting. Well, I mean, even if you can find it, count one and count two, you wouldn't be able to get there in terms of calling the agency, the claim of agency as being monetary, would you? You agree to that. That's not monetary, is it? We agree that that's not monetary. The problem with that one is it's not even really a claim. If I can just back up a little bit here, Your Honor, the Suits and Admiralty Act and the Public Vessels Act are waivers of sovereign immunity of the United States. They do not create generic agency relationships such that people run around being agents of the United States. The way they work is that if there is an incident and litigation arises, the Daniels case, which is talked about here being typical, a seaman was injured on a Navy vessel while SATEC was operating it. In that situation, if SATEC is sued, it can say, listen, this should really be a suit against the United States, not against me. And then it can ask for the United States to be substituted as the defendant in that litigation. It is highly fact specific. For example, if the seaman's injured at sea, maybe he's on a Navy vessel. That's an easier case. But maybe it's one of these cases where under the contract, SATEC can go and hire a private vessel and use that. In that case, we would probably say, no, you can't substitute the United States. SATEC might disagree. Or say there is a Navy vessel, but actually the negligence that led to the accident had nothing to do with the condition of the vessel or the United States. And it was something that SATEC did. So these are very fact specific issues under the SIA and the PVA. And there isn't this just generic agency floating in the air. And so that's why that claim isn't good. And as the district court pointed out, you have to have something that you're actually entitled to under the contract to get a declaration on it. And any order that this court were to issue under the SIA over the PVA would just be relevant to whether in litigation the United States could be substituted as the defendant. Does it matter that SATEC seems to operate some non-Navy ships, at least under the contract provision? Some of the cost receipts indicate that. They seem to operate non-Navy type ships. Yeah, as I just said, that would be relevant under the Suits and Admiralty Act and the Public Vessels Act. Because if it's a Navy vessel, we know it's a public vessel. If they're operating a private ship, we would take the position that it would, at least at the outset, we would definitely take the position that that was not a proper Suits and Admiralty Act case. I just like to point out that at page 19 of their reply brief, they tell us what we really want to know is, is the United States the proper defendant in the Richards case, which is the California case? And the California court has already looked at this issue and said no. At page 100 of the JA, it went through a laundry list of reasons like there's no claim against the U.S., there's no identifiable federal interest or policy, nobody was injured on a federal vessel. It's just a state law breach of contract action based on the California wage laws. Notably, that letter does not say anything about DOJ. I mean, that decision doesn't say anything about DOJ representations. It's just the court goes through and applies the law and talks about the Suits and Admiralty Act and says, this really has nothing to do with this case. And that's where it's relevant. And I think at page 19 of the reply brief, that's where SATEC finally buckles down and says, yeah, we really want to know about the Richards action. So, I think that's all I have for you. If you have other questions, I'd be delighted to address them. Thank you, Ms. Murphy. Mr. Holloman, you have some time reserved. Yes, thank you, Judge Berger. I'm going to try and just hit a few of those points that I think are important. First of all, the suggestion that SATEC didn't present or seek an advance agreement on these costs under FAR 31-109 is completely inconsistent with not only the communications with the Navy, but also the certified claim we submitted. And I've got to be a little bit careful here because, quite frankly, I'm nothing short of stunned to hear Ms. Murphy present to this court that we have never provided any indication of what it would take to resolve this case. Indeed, that has been done and presented to her office, and her office refused to act on the putatively agreed-to resolution. So, the fact that the United States has told this court that if they just had an idea what the money was and what the issue was, it would answer the question is simply patently false. Now, turning back to the PBA and the SIA, I note that what Ms. Murphy did was, frankly, spend a bunch of time arguing about what? The merits. The merits of this case. Indeed, whether or not the court ultimately, the district court ultimately, should find us to be an agent or not an agent under the contracts is not a jurisdictional question. It simply is not a jurisdictional question. That's something that the court would take up, consider all the evidence that's in front of it. But I want to make sure that I point out that when Ms. Murphy says all that factual detail is necessary, I strongly encourage this court to look at J39 and J40, a letter from the United States Department of Justice to the plaintiff in the Richard litigation that spans all of two paragraphs, never mentions any of the things that Ms. Murphy says are necessary to analyze whether somebody is a PBA or an SIA agent, and not only says that we are not a PBA and an SIA agent, but actually affirmatively says that SATEC and CPC may not make any such representations to the contrary. So, indeed, they issue a letter that does none of the things that Ms. Murphy has said, interpreting this contract of saying we're not a PBA and SIA agent. And, indeed, this does end up in front of the California court. And, unsurprisingly, the California court finds that we're not a PBA and SIA agent. But at the end of the day, as I said, and is clear under the Contract Disputes Act and is clear under our contract, whether the California court considers whether or not we are an agent under these contracts as determined by the appropriate authority that Congress has identified, whether the California court considers that is the California court's business. But what I'm here saying is the United States has made an affirmative statement about our agency status, an affirmative official statement about our agency status, that we are absolutely entitled to have heard whether it's correct or not. And if the United States meant all the things Ms. Murphy said, it would have retracted that letter a long time ago. But instead, like everything it's done in this case, it's cut SATEC loose. It told SATEC not to follow Mendiola. SATEC got sued. The Navy cut them loose. Now, if you read in the joint appendix, you see the very communications where the Navy acknowledges that this is a big issue for the Navy. It's not as much bigger than SATEC, right? And they acknowledge that in their emails with SATEC that are in the record. And the answer, the answer from the Navy is not to defend their contractor, help their contractor, tell their contractor the position. They cut their contractor, a small PG County company, loose to deal with a multimillion-dollar class action without any guidance from the Navy. And then on top of it, to make sure they were not dragged into the suit because they didn't want to be there. Let's be clear about it. Because this is a big issue for the Navy, they said it right in the emails that are in your record. Instead of doing the honorable thing, they sent a letter to the plaintiffs in the case saying, we're not a PBA and SIA agent. And you know what? They can't even represent that. And the fact that this, that the suggestion is that the Navy having done that on a matter of agency, having made an assertion through the department of that nature, that we can't have our case heard about whether that statement, official statement by the United States is correct or incorrect. Is simply wrong jurisdictionally. And whether or not Ms. Murphy wants to argue with me at a later date in district court about whether or not we actually are an agent is not before this court. The question before this court is, have we brought on a proper CDA claim? And very quickly, Secure Force, there was no claim. If I might, Ron, I see I'm a little bit over, but just very quickly on Secure Force. There was no claim at all by the plaintiff in that case. That was a termination for default. The places to look for similar circumstances are cited in our brief. Alliant Tech Systems, Todd Construction, both Federal Circuit cases, TRW, Martin Marietta, both cost principal cases. The Secure Force is not applicable to this case. There is no termination for default. There is no government claim. And in that case, there was no claim filed at all. We obviously did. Thank you very much. We appreciate your time today. Thank you. Thank you so much. Mr. Holland, Ms. Murphy, we can't come down and reach you, but please know that we appreciate so much your helping us on this case and your presence. And we wish you well and be safe. Take care, everybody. Bye bye. Thank you.
judges: Roger L. Gregory, James Andrew Wynn, Stephanie D. Thacker